## DUNCAN S. WALKER *vs.* THE ERIE RAILWAY COMPANY.

The object of the law being to fairly compensate a party injured through the negligence of another, for the entire loss directly caused by the injury, the pecuniary consequences resulting from such party's inability to give his business his attention forms a proper item of the remuneration to be made.

Where a train of cars upon the defendant's railway, in which the plaintiff was a passenger, was met by a construction train coming from the opposite direction, which had upon it a bar of iron projecting five or six feet, in a slanting direction, so that it would necessarily run into anything it came against, and such bar struck the car in which the plaintiff was sitting, and injured him; *Held* that in the absence of everything tending to explain or show how the iron bar was placed in the position that produced the injury, the inference was plain that the injury resulted from the inattention and negligence of the persons having the control and management of the construction train.

*Held, also,* that such inattention and negligence was a violation of the obligation existing between the defendant as a carrier, and the plaintiff as a passenger, which, by its contract, the defendant had assumed to perform; viz. to observe the highest degree of skill, care and attention in his carriage and transportation. And that was sufficient to entitle the plaintiff to recover damages for the injury sustained.

In actions to recover damages for personal injuries occasioned by negligence, no precise rule exists by which the extent of the recovery can be prescribed. For the compensation to be received is, to a great extent, to be awarded for pain and suffering which cannot be accurately measured by amounts.

The rule so carefully maintained and guarded in actions upon contracts, and for tortious injuries to property, is incapable of being applied where the injury is to the person; injuries of that character being without precise pecuniary measure.

The law has accordingly, in that class of cases, committed the determination of the amount of damages to be awarded, to the experience and good sense of jurors. And when the verdict rendered by them may reasonably be presumed to have resulted from an honest and intelligent exercise of judgment on their part, the policy of the courts is, and necessarily must be, not to interfere with their conclusion.

Where injuries sustained by the plaintiff through the negligence of the defendant—a carrier of passengers—were of an exceedingly painful, serious and permanent nature, some of the important effects of which would probably continue during his natural life, and might sensibly abridge the period to which it might otherwise have been extended; and the plaintiff was in his early manhood, and engaged in an extensive and lucrative business, which was impaired by his inability to give it the requisite attention, since his

Walker *v.* The Erie Railway Company.

injury, and he was afflicted with bodily derangements that might measurably unfit him for the duties of his profession ; *Held* that under these circumstances, the court had no data from which it could say that a verdict for the plaintiff for $20,000, was greater than the compensation he should justly receive.

Where a statement of a witness is simply objected to, in general terms, at the trial, it cannot be urged, on appeal, that it was inadmissible because it was the *opinion* of the witness. If the ground of the objection is not stated, at the trial, it will be deemed to have been waived.

THIS action was brought to recover damages for injuries sustained by the plaintiff as a passenger on the defendant's railway, on the 8th of March, 1869. At the time of the injury the plaintiff was in the smoking car, the first passenger car in the train, and the train was moving at the rate of about thirty miles an hour, on its way between Port Jervis and the city of New York, proceeding to the place last named. As this train passed a curve, a construction train in the employment of the defendant was discovered by the engineer moving in the opposite direction. And upon that train a railroad bar of iron projected from the platform car constituting a portion of the construction train. The engineer testified that he thought it projected something like five or six feet. It was in a slanting direction, so that it would necessarily run into anything it came against. It kind of jarred, stopped the headway of the train considerably; he heard something crash; upon stopping his train and examining the cars, he found the side of the smoking car torn out, between the front and middle part. At Sufferns he testified that he went back and examined the cars; the first passenger car was broken in, and the seats all torn out; the sides were split open, and the seats were scattered all over the car. By the other evidence in the case it was shown that the plaintiff was in the portion of the car which was broken, and received his injuries at the same time and by the same means. Evidence was also given tending to show the nature and extent of his inju-

ries; his sufferings following it; his position, business and probable loss in consequence of it. The jury rendered a verdict in his favor, for $20,000. A motion for a new trial was afterwards made by the defendant, and upon that being denied, the defendant appealed from the order denying it, and also from the judgment entered upon the verdict, to the general term.

*S. Newell*, for the appellant.

*H. Brodhead*, for the respondent.

*By the Court*, DANIELS, J.   The injuries received by the plaintiff, as well as their actual and probable consequences, were described by him in the testimony he gave as a witness upon the trial, and by the physicians who attended and treated him for them.   From his own evidence, which, in the absence of anything in the case contradicting it, the jury certainly had the right to believe, it appeared that he had previously been in a state of complete health. That he was so far injured as to lose his consciousness for the time, and when he recovered it, found the blood streaming from his mouth and nose; feeling nothing but a dim consciousness that some terrible calamity had happened. In a weak condition he was led into the next car.   At first he felt scarcely any pain, but weak and sick at the stomach, with great numbness about the head and limbs. His brain, he said, was evidently numbed, and sensibility deadened by the blows, and concussion.   He was removed from the cars at Paterson.   And after that he stated that the lower limbs, beginning at the back, down to the knees, felt stiff.   Also that there was contusion upon the right leg near the thigh; on the left leg, above the knee; upon the right side of the body just above the hip, and well towards the back, about an inch above the right temple; and also one upon the left side of the nose; and his lip

Walker *v.* The Erie Railway Company.

was cut through near the middle, and extending back to the rear of the upper row of the teeth on the left side. The whole of the left portion inside the mouth was lacerated and swollen; the upper front teeth broken off, two near the base, the others in the jaw. The molar tooth on the left entirely smashed out; and the upper molar on the right side had a piece broken off; a contusion about the center of the left jaw; the jaws stiff, and the face on the left side much swollen. The pain in the mouth and face became intense; he felt confused, as if sinking rapidly, and thought he should die before the physician came. At night, he testified, that he lay awake in great agony; for three weeks he suffered the same from the lacerations of his mouth, pain in the head, face and jaw, with all his teeth very sensitive, and his lower limbs, at times, stiff and very uncomfortable. In the following October his whole face became swollen, giving him intense pain for two days and nights. In June, 1869, he had a severe attack of the kidneys, from which he suffered great agony, and to allay it was obliged to take chloroform. In May, before, and October, January and March, afterwards, he experienced similar attacks. A nervous disease of the kidneys, he testified, had occurred, since the accident. He stated, that he had suffered much, at times, from severe headaches, to which, before that, he had not been accustomed; and if he sat still any length of time, there was numbness and an unpleasant sensation, beginning in the lower parts of the back, and extending down the limbs to a point above the knees. He also testified that he was by profession a lawyer, and could not undergo the same amount of work as formerly without some immediate injurious result; that he could not sustain the same amount of fatigue; that his capacity to enjoy life had been to a great extent affected by these injuries, and his constitution had been weakened by them; before the accident he walked great distances without fatigue, but at the time

when his evidence was taken, May 20, 1870, if he walked far his limbs became stiff and numb; that he had previously been accustomed to sleep soundly, but since then he did not sleep soundly nor well. He had also become subject to attacks of rush of blood to the head, producing dizziness, which never occurred before, except upon some unusually violent exertion; and to great depression of spirits, produced by his nervous condition; the distinctness of his articulation was for a long time seriously affected, and still remained materially affected; and by his absence from his business it had become generally impaired.

Dr. William H. Van Buren, who was called upon to attend the plaintiff professionally, soon after the injuries were received, corroborates the plaintiff's description of them, by his evidence. He added that he could not say, that all the evil consequences to the plaintiff's system, of these injuries, had, to a certainty, fully developed themselves when he last saw him. That in cases of railroad injury, he constantly saw persons who traced back the source of existing disease to injuries received by railroad accidents, and properly did so; that he did the same. That the character of the injury showed that the plaintiff had evidently been in imminent peril of his life. He also added, that these injuries were exceedingly and unusually painful; that they would have a tendency to weaken the plaintiff's constitution, invite disease, and impair his capacity to enjoy life. He thought the brain had been injured to the extent of a recent concussion. The plaintiff was confined to the hotel in New York, to which he was removed from Paterson, for the period of about two weeks.

Another physician, who was called upon professionally by the plaintiff, August 1870, testified that he then complained of fixed pain at the junction of the spinal column and the hip, radiating down both legs, but particularly the left thigh and leg, and of numbness in that limb; and

Walker *v.* The Erie Railway Company.

that there was a perceptible drag of the whole of that limb. He also complained of inability to pursue any long continued train of thought; of fullness and tension in the head; of headache, restlessness and bad dreams. The witness considered these effects the symptoms of what is known as paresis, or enfeeblement of the spinal cord, the result, in many cases, of concussion of the spinal cord, or brain, as the one or the other might exist. This trouble, he stated, with the back and limbs, has continued with alternations of better and worse. He always seemed conscious of the existence of pain. The witness deemed them the result of the accident, and stated that they were the precursors of more decided paralytic symptoms. He thought there was danger of paralysis, but hoped to avert it; and that that disease might result from an affection of the spinal cord; that there was no necessity for a direct blow to the spine to produce such a result. A person might have a concussion, not at first appearing serious, proving at last to be permanent and serious. The kidney derangements, he stated, further, were always traceable to nervous disorders.

In addition to this evidence relating to the plaintiff's condition, he himself testified that he was at the time, a partner with his father, the late Hon. Robert J. Walker, in the practice of the law, at the city of Washington. That their business was extended and lucrative, yielding them a cash income for the previous year, of $37,000, of which his share was one half. This evidence was objected to by the defendant, and received, subject to the exception of its counsel. But when it is remembered that the object of the law is to fairly compensate the party injured, for the entire loss directly caused by the injury, it becomes apparent at once, that the pecuniary consequences resulting from his inability to give his business his attention, will form a proper item of the remuneration to be made. And that is plainly warranted by the authorities upon the subject.

(*Lincoln* v. *Saratoga and Schenectady R. R. Co.*, 23 *Wend.* 425. *Wade* v. *Leroy*, 20 *How. U. S.* 34. *Nebraska City* v. *Campbell*, 2 *Black.* 590. *McIntyre* v. *N. Y. Cent. R. R.* 37 *N. Y.* 287.)

Under the evidence referred to, as to the manner in which the injury was occasioned, and in the entire absence of everything tending to explain, or show how the iron bar upon the construction train was placed in the position that produced it, the inference is a plain one, that it resulted from the negligence of the persons in the control and management of that train. It could have been, and such articles usually are, carried differently, and in such a manner as not to be the cause of danger or harm to the other trains liable to be met upon the other track of the railway, and the omission to carry it safely, in the absence of all explanation tending to exculpate the persons having control of it, from the charge of negligence and inattention to their duties, necessarily leads to the conclusion that such inattention and negligence existed in the case. (*Bowen* v. *N. Y. Cent. R. R.* 18 *N. Y.* 408. *Edgerton* v. *N. Y. and Harlem R. R. Co.*, 39 *id.* 227.)

And it violated the obligation existing between the defendant as a carrier, and the plaintiff as a passenger, which, by its contract, the defendant had assumed to perform; to observe the highest degree of skill, care and attention in his carriage and transportation. (*Hegeman* v. *Western Railroad*, 3 *Kern.* 9. *Brown* v. *N. Y. Cent. R. R.* 34 *N. Y.* 404. *Maverick* v. *Eighth Avenue R. R. Co.*, 36 *id.* 378.) And that, under the circumstances, presented a case on which the plaintiff was entitled to recover.

The defendant's counsel, however, contends that the recovery in the action was excessive. In this class of cases no precise rule exists, by which the extent of the recovery can be prescribed; for the compensation to be received is, to a great extent, to be awarded for pain and suffering which cannot be accurately measured by amounts. (*Ran-*

*som* v. *N. Y. and Erie Railway Co.*, 15 *N. Y.* 415.) The rule so carefully maintained and guarded in actions upon contracts, and for tortious injuries to property, is incapable of being applied where the injury is to the person ; for those injuries are without precise pecuniary measure. The law has, accordingly, in this class of cases, committed the determination of the amount of damages to be awarded to the experience and good sense of jurors. And where the verdict rendered by them, may reasonably be presumed to have resulted from an honest and intelligent exercise of judgment upon their part, the policy of the courts is, and necessarily must be, not to interfere with their conclusion. ( *Wightman* v. *City of Providence*, 1 *Cliff.* 524. *Caldwell* v. *New Jersey Steamboat Co.*, 56 *Barb.* 425.)

The injuries sustained by the plaintiff, as they have already been shown, from the evidence, in the view in which the jury were at liberty to accept it, were of an exceedingly painful, serious and permanent nature, some of the important effects of which it is probable will continue during his natural life, and may sensibly abridge the period to which that might otherwise have been extended. He was of the age of twenty-eight years, in his early manhood, engaged in an extended and lucrative practice of the law, impaired by his inability to give it the attention which it required, and attended with bodily derangements that may measurably unfit him for the duties of its pursuit. Under the circumstances which the evidence tended to establish, the court has no data from which it can say that the verdict rendered by the jury was greater than the compensation the plaintiff justly should receive. If they believed, as they may be assumed to have done, that all the consequences mentioned by the medical witnesses, and indicated by the testimony given by the plaintiff, would probably result from the injury he has been subjected to, then the verdict was not too large. And this court should not set it aside ; which is the only mode in which it could,

in any case like the present one, be at liberty to interfere with it. (*Cassin* v. *Delany*, 38 *N. Y.* 178.)

Objections were taken, during the trial, to certain statements of the plaintiff as a witness, allowed to be given by the court. By the first, now relied upon, he answered that the brain was evidently numbed, and sensibility deadened by the blows and concussion. This statement was simply objected to in general terms, but it is now urged that it was inadmissible because it was the opinion of the witness. That, however, cannot properly be held to be its nature; for the witness was describing the effects produced by the injury upon his feelings, and this was most likely designed to be of the same character. But if it was not, the objection now urged should have been presented to the attention of the court at the trial. If it had been, and the answer was deemed the statement of an opinion, as distinguished from the relation of a fact, it would, no doubt, have been then excluded as improper. The omission to present that point then, must be held to be a waiver of it now. (*Fountain* v. *Pettee*, 38 *N. Y.* 184–186.)

A similar form of objection was made to the evidence showing the kidney difficulties experienced by the plaintiff after the accident. But as he was free from bodily derangement before the injury, and it was shown that these derangements were traceable to nervous disorders, or as the plaintiff testified, a nervous disease of the kidneys occurred, and the plaintiff's nervous system suffered from the injury received, there was sufficient probability for insisting that these attacks were caused by it, to render the question whether they were or were not the proper subject of consideration by the jury. This seems to be one of the derangements Doctor Dimkerd treated him for; and he swore that what he treated him for was entirely due to the accident. For these reasons, this evidence was admissible, but if it had not been, the objection was too general to bring it in question upon this appeal.

Walker *v.* The Erie Railway Company.

The same answers may, with equal propriety, be given to the objection taken to the evidence that the plaintiff had not been sick to exceed a day at a time, and from trivial causes, since 1864, and then only with army fever, from which he completely recovered. It had some tendency to confirm the statement made by himself, and by Doctor Van Buren, that he was in perfect health at the time of the accident.

The objection to the statement that the plaintiff was in partnership with his father, may be dismissed with the remark, that if it was entirely immaterial that objection was not taken to it, but one simply of the most general form, it was properly received as an incident of the business relations of the plaintiff, and as introductory to the evidence of the illness of his partner, for which reason he could not be expected to discharge the plaintiff's duties in their joint business.

The defendant requested that the court should charge the jury that if the defendant, or its agents, had no knowledge, or reasonable means of knowledge, of the rail projecting from the car, in season to remove it before the accident, the plaintiff could not recover. This was properly denied, for the reason that no evidence was given in the course of the trial tending to show that no such knowledge, or means of knowledge, existed. The facts indicated the contrary. If a due degree of attention had been bestowed upon the construction train, the state of the rail upon the platform car would have been discovered at once, and the accident probably avoided. Then the answer which the court, at the trial, gave to the proposition was entirely apposite and reasonable; that was, that the rail might have been so carelessly placed upon the car as to slip into an improper position by the movement of the train. Certainly, human foresight, properly directed, was capable of guarding against the result which followed.

Walker *v.* The Erie Railway Company.

And if it could have done so, the defendant was liable for the omission.

The refusal to charge that there was no evidence before the jury that the plaintiff was not earning as much money since, as before the accident, was not error. The court charged that there was no direct evidence to that effect. But circumstances were shown by the medical witnesses sworn for the plaintiff, and by his own testimony, tending to show that his business capacity had been diminished, and from that it might well be inferred that his earnings were reduced by means of the accident.

Upon this subject, the plaintiff testified that his powers of application to business, and for continued thought, had been diminished; and that his business had been impaired by its want of attention. Doctor Van Buren said that the injuries would have a tendency to weaken his constitution, to invite disease; impair his capacity to enjoy life; and that nothing could put him where he was before; which, according to this witness, was a state of perfect health. The evidence of Doctor Dimkerd was, in substance, to the same effect. And the plaintiff, in this connection, also testified that he could not undergo the same amount of work as formerly, without some immediate injurious results.

No ground exists for interfering with the disposition which has been made of the case; and the order and judgment should accordingly be affirmed, with costs.

[THIRD DEPARTMENT, GENERAL TERM, at Schenectady, June 4, 1872. *P. Potter, Parker* and *Daniels,* Justices.]