Daniels, J.
The defendant, Carhart, was employed by the plaintiff in the capacity of a freight agent, and received moneys in the course of his employment which it was the object of the plaintiff in this action to recover from him. He had for several years previous to June, 1884, had charge of the east-bound freight of the plaintiff, which was consigned to him for foreign traffic. For his services in the receipt and shipment of that he was entitled to receive one dollar for each car load carried by lake and rail, and at the rate of one dollar and fifty cents for each car load carried wholly by rail. About the 1st of June, 1884, a further agreement was made with him by which the management of the plaintiff’s west-bound freight was placed under his charge, and for that a stipulated compensation was to be paid to him of eight per cent, on the revenue from the city of Hew York, as that should be shown by the way-bills made by the plaintiff. It was out of the transactions of the defendant Carhart under these employments that the funds were derived which were the subject of controversy in this action, and for which an accounting was required on his part. The trial resulted in a determination by the referee that the defendant had in his hands the sum of $13,520.18 of moneys collected and received by him in the course of his employment. Items included in the statement of the account from which this balance was produced have been objected to as improperly allowed against the plaintiff, and their consideration will become necessary for the disposition of the plaintiff’s appeal. These items related chiefly to the eastward-bound business, and the defendant made a further claim against the plaintiff for damages for breach of contract alleged to have accrued to him from the westward-bound traffic. These damages include the principal claim made by this defendant against the plaintiff, and upon that part of his case the referee allowed him the sum of $6,560.02, reducing the previously stated balance of the plaintiff to the sum of $6,960.16, besides interest. The right of the defendant to the allowance of any part of this sum of money, as well as to "commissions upon east-bound traffic, largely depend upon the fact whether an agreement was made with him by which he was employed in the westbound traffic of the plaintiff for the period of one year from the 2d of June, 1884, and if he was whether such a modification of the employment was made in the fall of that year by which his commissions were changed to a monthly compensation. The referee, as a fact, has found that the *428 defendant was employed by the plaintiff in the westward-bound traffic for the period of one year, and in support of the appeal this finding has been objected to as unsupported by the evidence. The first testimony given to establish the making of the agreement consists of a letter written by the freight traffic manager of the company to the defendant, on the 2d of June, 1884. And as this letter forms the foundation of the greater part of the controversy in the action, it will be here transcribed as it is contained in the case:
“New York, June 2, 1884. “G-. W. Carhart, Esq., F. F. Agent, New York:
“My Dear Sir—Replying to your favor of the 30th ult., ■and confirming our understanding of this morning, I would say that we wifi at once turn over to you the entire management of our import bonded freight traffic, it being understood that you wifi assume all the expenses of the agencies in Europe and all the expenses of clerks, etc., for properly handling the business in New York, with the exception that we will assume and pay the cost of transferring the freight from the steamers to our docks, and wifi pay the charges made by the United States government for passing the traffic through the custom house here. In consideration of this we will pay you a commission of eight (8) per cent, on the revenue from New York, as shown on the way-bills made by this company, with the further understanding that at the end of one year you show to us that you have paid out in expenses which have been approved by us, an amount in excess of eight (8) per cent, commissions referred to, we will pay to you such difference and will then take up the matter with the view of such modifications as may be deemed best.
“Yours very truly,
“R. 0. VILAS, “(Brown)
“Frt. Traffic Manager,”
This letter does contain a statement, or allusion to the fact, that the defendant’s employment in the westerly bound traffic would continue for the period of a year, for it was at the expiration of that time that the intention was expressed in it, of making an adjustment with the defendant in case the percentage intended to be given to bim should not be equal to the expenses incurred by him in the course of his business. The letter, however, does not stand alone as the evidence of the defendant’s employment, for he stated as a witness upon the trial that he had talked over the subject of his employment with Mr. Vilas, and also with Mr. Blanchard, who was the vice-president of *429 the company. In the course of his examination he stated that Mr. Vilas handed him the letter which he opened and read, and that they then talked the matter over, and that he “ said to Mr. Vilas, ‘now this goes for a year.’ He said ‘ yes, just the way it reads, and then we will take it up for further consideration.’” The letter of Mr. Vilas to Mr. Blanchard, the vice-president, written upon the same day, also expressed the understanding of the writer to be that the defendant’s employment was of a somewhat permanent character, for he stated in it that it was understood that if at the end of six months, or one year, it was shown by Carhart that his actual outlay for expenses exceeded the revenue from the eight per cent, commission, the difference would be made good to him. And from the testimony of Mr. Blanchard it appears that the understanding upon his part was that tne defendant’s employment should be for at least the period of one year. This was considered as sufficiently authorizing him to appoint and retain a foreign agent for the same period. His testimony was that Carhart asked him “if it was desirable while in England to employ sub-agents for a year, if he could do it for the term of one year. I said ‘ yes, that his own arrangements might be for one year, that his arrangement for sub-agents might be for one year, that his arrangement for the rental of offices might be for one year.’ I then referred him to Mr. Vilas for the details.” The evidence of Mr. Vilas was directly in conflict with that of the defendant as to the alleged conversation relating to the term of service, and so was that of the witness Adam H. Ward, and there was other evidence in the case, but not so direct, conflicting with the defendants statement that the contract for his employment was to continue until the expiration of a year. But it is quite plain that this conflicting evidence did present the question of fact for the referee to decide as to who was to be believed. And as he determined this part of the case in favor of the defendant, and found that such an agreement for his employment had been made, this conclusion arrived at by him cannot be set aside or disregarded by the court. For even if it be assumed that there was a preponderance of evidence in behalf of the plaintiff upon this subject, it was still for the referee who had the witnesses before him, observed their manner and heard their testimony, and considered their interests and impulses, to determine who correctly related what did transpire upon this subject. And where that is the State of the proof the conclusion of the referee as to the fact is to be regarded as final. Sherwood v. Hauser, 94 N. Y., 626.
In the disposition of the appeal, therefore, the fact is to be accepted as proved in the case that the defendant was *430 employed as the plaintiff’s agent in the west-bound freight traffic for the period of one year from the 2nd of June, 1884. His employment was not continued for that time, but he was discharged on the last day of November of that year.
The commissions to which he was entitled under the employment at the specified rate of eight per cent, were paid to him to the 1st of December, 1884, but from that time until the month of June, 1885, he claimed to be entitled to recover damages against the plaintiff for the loss of these commissions, and also for the difference in the ocean steamship charges between those made for spaces occupied by the west-bound freight and the amount charged for its transportation by the plaintiff through its agents according to its weight. This difference the defendant testified that it was agreed between himself and Vilas, he should have as a part of the profits of his employment, and in this claim he has also been corroborated by the evidence of Mr. Blanchard, who was at the time the vice-president of the company. And that it was designed that these differences should be received by him was by no means confidently denied by Mr. Vilas himself. The evidence given to prove this part of the agreement was excepted to for the reason that no such stipulation was contained in the letter. But as that letter appears not to have been intended to contain a complete statement of the agreement or understanding, but it was made the basis of a more specific oral agreement, it follows that this addition could be made to it without violating the rules of evidence applicable to cases where the parties have reduced their agreement to writing That was not the case here, but the agreement was partly in writing and partly in words, arid the defendant was at liberty to prove the precise extent of it, although this further stipulation was not inserted in the letter.
In the allowance of damages made by the referee for the nón-performance of the agreement concerning the westbound freight he awarded to the defendant the sum of $3,560.02 on account of the eight per cent, commissions agreed to be paid in the letter itself, and the further sum of $3,000 on account of the profits or differences arising out of the ocean steamship rates or charges. These allowances have each been made the subject of objection under the evidence produced before the referee upon the trial. This evidence consisted in a great measure of testimony showing the amounts previously realized out of the transaction of this business. Witnesses were placed upon the stand who previously had the management of this business for the plaintiff, and who testified to its nature and extent and amount of profit realized from its transaction. And' one *431 witness was sworn and examined who succeeded the defendant in the same line of business, and stated the amounts realized in its transaction between the time of the defendant’s discharge and the expiration of this period of yearly-service. This evidence was objected to as incompetent on the part of the plaintiff, and exceptions have been taken to the decision of the referee so far as it has proceeded upon the character and sufficiency of this testimony. But the objection as to the competency of the evidence is not considered to be well-founded, for there is ordinarily no other way within his control in which the party entitled to the benefit of an employment of this description, can establish the amount which he would probably realize by being continued in his employment. The business was of a permanent description including in the aggregate a large variety of transactions and approximating an average income to to the plaintiff. And where that may be the case, and the probable loss of the party entitled to the benefit of a contract for the management and transaction of the business can by no other means accessible to himself be proven, he may resort to this description of evidence. That was considered and held to be proper in Walker v. Erie Railway Co. (63 Barb. 260). And while this was deemed to extend the rule of evidence, to the utmost limit to which it should be carried, it was not held to be improper in Masterton v. Village of Mount Vernon (58 N. Y., 391). The admissibility of this description of evidence where that may become the necessary means of proving the extent of the loss of a party was also before the court in Clifford v. Dam (44 Supr. Ct., 391). There the jury was directed to consider the nature of the plaintiff’s business, its extent and the time he was prevented from attending to it by the accident in controversy, in ascertaining his damages, and that was held to be a lawful direction. And without dissenting from the correctness of this proposition the case was afterwards affirmed in (81 N. Y., 52). And under this rule it must at this time be held that the referee was right in receiving this character of evidence.
By the evidence which he received the fact was reasonably well established that the defendant had been deprived by his discharge from the employment of the plaintiff of the sum of $3,000 arising out of the differences in the ocean steamship charges. His own testimony directly tended to establish the correctness of this view, for he stated that the amount which had been received by him from that source up to the 1st of December was the sum of $10,581.35, and that this period included three of the dullest months of the year. The witness H. E. Duval, who had charge of this branch of the plaintiff’s business preceding the time of the defend *432 ant’s employment in it, stated that he derived from this, source $20,000 per year. John H. Thomas, who had likewise been employed in the same department, placed the amount realized for three and a han preceding years at a total of about $90,000. This, however, was subject to expenses amounting for the first two years to the sum of $1,000 or $1,200 a month, and after that about $2,000 a. month, but during a large portion of the time mentioned by him the emoluments arising out of this part of the business were largely increased by an unusual amount of shipments' under a contract with the Hudson Bay Company. The other witness, Wilson, who testified upon the.' same subject and succeeded the defendant in this business, stated that he received about $3,000 from these differences-during the six months succeeding the defendant’s discharge. And the evidence of these witnesses taken together sustain the conclusion that the referee was right in holding that the defendant had lost the sum of $3,000 from this source, by being prevented from fulfilling his term of service under the agreement with the plaintiff.
But as to the other item allowed to him by way of damages for the non-performance of the agreement by the plaintiff, the evidence falls far short of justifying its. allowance by the referee. It appeared generally in the-case by the evidence of the witness Vilas, who employed the defendant, that it was not designed that he should receive more in the way of the eight per cent, compensation than would reimburse him for his expenses, as it was considered that the company was entitled to the benefit of' all his time and exertions, for the compensation he might-derive from the eastward bound freight. And the testimony given upon the trial of the action was not such as to sustain the conclusion that this view was far out of the way, as a matter of probability in the employment. It was contemplated by the letter which was written to the defendant, and also in the letter to Blanchard, the vice-president, that the eight per cent, might not reimburse the-defendant for the expenses of his agency, and the payment-of the persons necessarily employed by him in the transaction of the business. A stipulation was for that reason made to reimburse him the excess he might be out by the way of expenses, if such an excess should be made to appear at the expiration of six months, or at the end of one year, after this period of -service commenced. And that the defendant could derive no profit from this commission of' eight per cent, is rendered probable by his own evidence, for while he states that he received in gross the sum of $3,837.87 by way of the eight per cent, commissions, it still appeared that he had paid out for the expenses of his *433 agency and the salaries of persons employed by him up to the 1st of December, 1884, the sum of $7,341.80. It is true that his testimony and estimate, and that of another witness, was that the expenses were much larger for the first half of the year than they would be for the last. He considered that they would not be half as large for the residue of the year as they had been during the time he was in fact employed. But if they were not, and the income proved to be substantially the same, it would leave him no more than a nominal compensation to be expected by way of profit from this source, over and above his expenditures. The testimony of the witnesses Duval, Thomas and Blanchard does not relate to the probable amount of receipts by the way of these commissions. They had not been so employed, and their evidence was directed to the state of the business resulting from the difference arising out of the ocean freights, while that of Wilson was the only witness besides the defendant who appears to have included both. And his testimony is, that from the first of December to the first of June, he realized out of both sources of revenue the sum of seven thousand five hundred dollars. ' His statement was that the profits from the commissions were about four thousand five hundred dollars, but out of those profits he, in like manner, as the defendant, had agreed to do, was required to pay the expenses of the business committed to his charge. And these expenses are stated at a fair average to be from five thousand five hundred to six thousand dollars a year, leaving but a small proportion of the forty-five hundred dollars derived by him, as the profits of the business which he transacted. But the evidence of this witness, and the figures which he gave, were inapplicable to the defendant’s claim, for the profits derived by him were obtained by way of tonnage commissions, and they were not shown to be the same as the eight per cent, stipulated to be paid to the defendant. Whether the tonnage commissions would be the same, or would be greater, or less, than the eight per cent, commission, was in no way shown or explained by the evidence, and for that reason the testimony of this witness furnished no practical criterion from which it could be concluded that the defendant had sustained loss to any material extent by being deprived of the benefit of this part of his agreement. As to the sum allowed by the referee, by way of damages caused by depriving the defendant of the commissions, the case seems to be wholly unsupported for the reason thar, the evidence which was given was inapplicable and unadapted to this part of the controversy, for it left this part of the claim *434 without any substantial support. And in that state of the evidence the omission of the plaintiff to produce the books and way bills will not aid his defense under the authority of Wild v. Northern R. R. Co. (53 N. Y., 156).
The same thing appears to be true as to an item of $200.39 entering into the claims of the defendant upon the eastward bound part of his business. That was disputed, and the witness Goodrich, who was a bookkeeper in this department, stated this sum, which was made upon certain vouchers, to be incorrect, and that those relating to it had been taken off by the defendant Mr. Carhart. The item likewise failed to be supported in the evidence of the defendant, for he stated “that other items, amounting to two hundred dollars, I do not know the particulars of. I have not seen them.” In the allowance of this amount the referee likewise appears to have been in error.
He also included in his report an item of $937.50 arising in the eastward bound business, and another of $396.56 for commissions in the westward bound business, which have been objected to by the plaintiff. This objection has been placed upon the ground that the compensation of the defendant was previously changed to a salary of $400 a month. And the evidence of the witness Vilas, and of at least one other witness whose testimony was taken upon the trial, directly tended to establish the fact that such a change had been made. But the defendant testified, while the intention of making the change was communicated to him that he did not assent to it, but he continued to claim his compensation under the agreements made with him, and had been allowed upon that basis in some of his subsequent settlements with the company. Where the truth was as to the alleged change in the agreement was a matter of fact to be decided by the referee, for the reasons already assigned in support of his authority over so much of the case, as related to the contract. And as he has held that no such change in the agreement was in fact made, and it could not be done without the assent of the defendant, he was right in allowing these items. .
The decision of the referee has also been drawn in question so far as it allowed the defendant $2,940.75 for commismissions on west-bound freight before the month of November. In support of this objection it has been urged that the amount was payable by other parties receiving and carrying the property. But the defendant testified, that the lines carrying the property were most of them controlled by the plaintiff, that his commission account was directly with the plaintiff, and he had no arrangement "with the freight lines, but the plaintiff took care of itself and had the management of these fast freight fines. His employment also *435 was by the plaintiff, and it was the plaintiff that stipulated with him for that employment, and the payment of his compensation, and as the facts have been found he had the legal right to look to the plaintiff for the amount of this charge. Some other objections of minor importance have been raised in support of the plaintiff’s appeal, but neither of them, under the evidence or rulings which were made during the progress of the trial, appear to be well founded.
The defendants in their appeal have brought in question the right of the referee to allow interest to the plaintiff upon the amount of money received in the course of this business, and withheld by the agent Carhart. It appears that an injunction was issued restraining him from making a disposition of these moneys, and cases have been cited in which it has been held that a party is not hable for interest upon money in his hands, which he is enjoined at the instance of the plaintiff from using. But these cases are not applicable to this controversy, for it was the office of the injunction only to restrain the defendants from disposing of this money for himself until the plaintiff’s right to recover it could be established. That was denied by the defendant, who was only willing to pay over the fond upon a settlement being made of the demands and claims presented by himself. In was not the office or purpose of the injunction to restrain him from refunding the money to the plaintiff. And as the action was determined, so far as the determination was in favor of the plaintiff, it has been found, and the evidence supports the finding, that he without right withheld this money from the plaintiff. It was the. money of the latter which by the terms of the employment should have been paid over. That was not done, but it was wrongfully withheld by him from the plaintiff. And when that may appear to be the condition of the case, interest is lawfully awarded by way of damages. Adams v. Fort Plain Bank, 36 N. Y., 255, 261; Sanders v. Lake Shore, etc., R. R. Co., 94 id., 641.
There was consequently no error in the disposition of this part of the case by the referee. The action, strictly speaking, was in equity for an accounting. The substantial matters of controversy were brought into the case through the claims of the defendant Carhart. Upon them, to a great extent, he has succeeded in establishing the correctness of his demands, and under the rule applied to the disposition of costs in actions in equity, they should not have been awarded against him in the action. Vandemark v. Schoonmaker, 9 Hun, 16.
As to the costs, therefore, the judgment, if it shall be allowed in part to stand, should be reversed and costs should not be awarded to either of the parties. But as the *436 referee has erred in allowing to the defendant the sum of $3,560.02 mentioned in the tenth subdivision of his report, and the sum of $200.39 included in the item of commission vouchers credited, in the ninth subdivision of the report, the judgment should be reversed and a new trial ordered, with costs to abide the event, unless within twenty days after notice of this decision the defendant stipulates to deduct these items from the amount reported in his favor by the referee, and that the recovery awarded in favor of the plaintiff shall, with interest, be correspondingly increased. If such a stipulation shall be served then as so modified, the judgment should be affirmed without costs to either of the parties, and in no event should either of the parties be allowed costs of these appeals.
I concur, Brady, J.