### MERSCHEIM v. MUSICAL MUTUAL PROTECTIVE UNION.

(*Supreme Court, General Term, First Department.* January 24, 1890.)

1. JUDGMENT—RES JUDICATA.
   In an action for damages for wrongful expulsion from a trades-union, a judgment in *mandamus* proceedings by plaintiff, as relator, against the union, declaring the expulsion illegal, and reinstating plaintiff, is competent evidence.
2. ASSOCIATIONS—EXPULSION OF MEMBERS—EVIDENCE.
   Plaintiff's claim of damages being based on his loss of employment by reason of such expulsion, and it being the rule of the union that no member shall permit himself to be employed with an expelled member, evidence that a black-list is kept posted in the office of the union is admissible.
3. SAME—DAMAGES.
   It is also competent for plaintiff to show what his earnings were while a member of the union, and how much they have diminished, and his inability to obtain continual employment after his expulsion, for the purpose of showing the injury he sustained by reason of being expelled.
4. SAME—RES GESTÆ.
   Evidence that when plaintiff, after his expulsion from the union, was discharged from employment, he was informed that he was not wanted, but that men belonging to the union were the ones to be employed, is admissible.
5. EVIDENCE—PROCEEDINGS IN FORMER ACTION.
   Proof in behalf of defendant of the proceedings resulting in plaintiff's expulsion from the union is inadmissible, the judgment in the *mandamus* proceedings, declaring the expulsion illegal, being conclusive.

Appeal from circuit court, New York county.

Action by Matthias Merscheim against the Musical Mutual Protective Union, for unlawful expulsion from membership in defendant association. From a judgment entered on a verdict for plaintiff and from an order denying a motion for a new trial defendant appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Charles Steckler,* (*Alfred Steckler,* of counsel,) for appellant. *August P. Wagener,* for respondent.

DANIELS, J. The plaintiff's cause of action, as it was set out in his complaint and the evidence tended to sustain it, was for damages which he had sustained because of his wrongful expulsion from membership in the Musical Mutual Protective Union. This union is a corporation created under the laws of the state of New York, and at the time of the plaintiff's expulsion consisted of upwards of 2,000 members. It was an association of persons engaged directly or indirectly in musical pursuits; and according to section 1, art. 3, of its constitution and by-laws it was made the duty of every member of the association to refuse to perform in any orchestra or band in which any person or persons were engaged who were not members in good standing, except organists, and directors of musical societies, and members of traveling companies, and then for no longer period than four weeks. Any member violating this section was declared to be deemed to have committed a breach of good faith and fair dealing between himself and the members of the society, and to be liable to punishment according to section 2, art. 2, of the by-laws and constitution; and by that section, if the person should be found guilty, he is to be fined for the first offense $10, for the second $20, and for the third to be expelled by the board of directors, whose decision it was declared should be final. The members were also made liable to be expelled by the board of directors for disobedience of their orders, or non-payment of fines imposed by

them.   But it was further declared that no expulsion should take place except on charges preferred, a copy of which should be served upon the member charged, who should have a reasonable opportunity for his defense.   The plaintiff was charged with a violation of an order made by the board of directors, and notice was given to him to appear before the board, and show cause why he should not be expelled from his membership for his disobedience of the order of the board of directors; but no charges were served upon him. He did appear at the time mentioned in the notice, and the charges were then read to him, but he denied the authority of the board of directors in the proceeding, and declared his intention to be not to obey any of its orders.   The board of directors proceeded with the case, and expelled the plaintiff from the association.   This was done in March, 1886.   The plaintiff afterwards applied to this court by process of *mandamus* for his restoration, and upon the trial of the action it was concluded that he had been expelled without authority, and unlawfully, and he was reinstated by the judgment recovered in that action in April, 1887.   And it was after his restoration to membership in this manner that this action was brought to recover damages alleged to have been sustained by him because of his unlawful expulsion.   Its trial resulted in a verdict in his favor for the sum of $500, and this appeal from the judgment entered upon the verdict, and the order denying a motion for a new trial, has been placed upon numerous exceptions taken to the admission of evidence upon the trial, and to the charge given by the court to the jury.

The judgment in the *mandamus* proceeding was offered as evidence, and the defendant objected to its admissibility as incompetent, irrelevant, immaterial, and not binding upon the defendant in the case.   This was overruled, and the judgment was received in evidence, and to the decision allowing it to be received the defendant's counsel excepted.   But this exception is without merit, for the litigation in the proceeding by *mandamus* was wholly between the plaintiff as the relator and the defendant, and the effect of it was the adjudication of the court that he had been unlawfully expelled from this association.   That was the point which formed the substantial controversy in that litigation.   It was plainly within the issue, and the judgment deciding it, as long as it has not been reversed or set aside, was decisive and controlling over the parties.   *Parkhurst* v. *Berdell*, 110 N. Y. 386, 18 N. E. Rep. 123.   In that case the litigation was between defendants in the action, and it was held to be as binding and conclusive upon them as it would have been if one had been the plaintiff and the other had been the defendant.   The principle proceeded upon is equally as applicable to the effect of this judgment, for the people were no more than the nominal party.   The real party was the plaintiff and the defendant.   It was their rights alone which were the subject of investigation, and decided by the judgment; and that judgment was conclusive, in the way of establishing the fact that the plaintiff had been unlawfully expelled and deprived of his rights as a member of this association, and so far as he suffered loss by this wrongful act of the defendant he was entitled to be indemnified in this action.

The further ground-work of his case was that, as this expulsion made it the duty of other members of the association not to be employed in bands or orchestras or otherwise with him after his expulsion, he had been deprived of his employment, and had been subjected thereby to serious injury and loss; and it was necessary that this loss should be substantially proved, at least to entitle him to anything more than nominal damages in the action.   *Leeds* v. *Gas-Light Co.*, 90 N. Y. 26.   As an item of evidence in the way of establishing the plaintiff's complaint that he had by this expulsion been deprived of his employment, he was allowed to prove, against the exception of the defendant, that a black-list was kept in its office.   From the fact of this list being there posted and maintained, it could very naturally be inferred that it was there by the authority of the defendant; and for that reason the court would

not have been justified in maintaining the objections taken to the proof of the posting of this list. It was pertinent evidence in the action, for it consisted of a fact tending to make the prohibition of the by-laws effectual, that no member of the association should permit himself to be employed with the plaintiff after he had been expelled from his membership, and the necessary effect of that would be to diminish the plaintiff's means of employment.

To prove that he had been deprived of employment by this conduct of the defendant, he proposed and was permitted to show what his earnings were while a member of the association, and how much they had diminished, and his inability to obtain continual employment after his expulsion. The defendant's counsel objected to this proof as incompetent, irrelevant and immaterial. But the court overruled the objections, and received the evidence; and this ruling seems to have been warranted by the peculiar nature of the action, for it would be impossible for the plaintiff to prove to a certainty that he had been injured in his ability to obtain employment by his wrongful expulsion from the association. The only manner in which this fact could be proved, if it could be maintained at all, was by showing circumstances indicating the probable result, under the constitution and by-laws, of the act of the plaintiff's expulsion; and evidence of his employment and earnings while he was in good standing in the association, and the diminished amount of that employment and earnings after his expulsion, and his posting as an expelled member, was the only accessible mode through which the existence of the fact alleged could be maintained. If this proof could not be given, then, whatever might in fact have been the extent of the injury and loss suffered by the plaintiff, the law would afford no means for recovering it in the action. It would sacrifice his right to indemnity to his inability to prove his case; and that the law is not chargeable with having done. But, on the contrary, where a wrong has been perpetrated, it permits the best evidence to be given to establish the right of action that the nature of the case will permit; and this was the best and the only proof which could be made by the plaintiff to sustain his action; and that the court was right in receiving it is reasonably well supported by the authorities. A point of this description arose in the case of *Walker* v. *Railway Co.*, 63 Barb. 260. There, to prove the extent of the plaintiff's loss by the injury, he was allowed to show the amount and income from his profession as a lawyer during the preceding year; and that was considered to be within the rule of evidence sustained by the authorities. Id. 265. And like evidence was allowed to be given in *Beisiegel* v. *Railroad Co.*, 40 N. Y. 9, 10. In *Bagley* v. *Smith*, 10 N. Y. 489, the action was for damages for the breach of a partnership contract caused by dissolving the firm before the time mentioned in the agreement; and it was there held that evidence of the gains and profits of the partnership business during its continuance was admissible, as indicating the extent of the plaintiff's loss and injury by reason of the unlawful dissolution of the firm. In *Metcalf* v. *Baker*, 57 N. Y. 662, the action was for a wrong by which the plaintiff had received an actionable injury; and the court held that the loss sustained by him in his practice as a physician was a ground for awarding damages; and that, of course, could only have been proved by showing the extent and income of his previous ·professional practice, and his inability to vigorously pursue it after the injury had been sustained. A like ruling was made in *Schile* v. *Brokhahus*, 80 N. Y. 614. There the plaintiff was permitted to prove the amount of business and profit derived from it prior to and subsequent to the wrong, as an indication of the damages sustained by him; and this evidence was held to have been legally received in the final decision of the action. There is no substantial ground for distinction between the proof which it was held could be legally given in these cases and the proof received upon the trial of this action, as to the plaintiff's earnings before and after the wrong suffered by him in his expulsion from his membership.

It has been further insisted that this evidence supplied no criterion by which the jury could measure or ascertain the plaintiff's loss or injury. But this position is incapable of being maintained; for, under all the authorities, the plaintiff was entitled to recover a compensation for the loss naturally or proximately resulting from his expulsion. That is the legal rule acknowledged by all the authorities; and it was in no manner doubted or disputed by the cases of *Association* v. *Dubuque*, 30 Iowa, 176, or *Donnell* v. *Jones*, 13 Ala. 490. But practically its correctness has been uniformly conceded and acted upon; and this evidence tended to prove that loss; and it was applied no differently from the course sanctioned by the authorities in the trial of this action, or in its submission to the jury by the court. In *Vicars* v. *Wilcocks*, 8 East, 1, the damages denied to the plaintiff were those resulting from his unlawful and unjustifiable discharge from service, that was not caused by the defendant's wrong, but by reason of the improper action of a third person upon information proceeding from him. The discharge was a distinct and separate wrong in itself, for which, upon no well-established principle, could the defendant be held to be liable. This subject was further considered in *Sneesby* v. *Railway Co.*, L. R. 9 Q. B. 263. But the decision in that case did no more than to carry out this legal principle, so far as to render the defendant liable for injuries to which its wrongful act had naturally and necessarily exposed the plaintiff's property. Neither the case of *Groat* v. *Gillespie*, 25 Wend. 383, or *Hargous* v. *Ablon*, 5 Hill, 472, nor either of the other authorities to which attention has been directed, sustain the position which in this manner has been taken by the defendant; and the direction given to the case at the trial fully accorded with what was held to be the law in *Blanchard* v. *Ely*, 21 Wend. 342, and the authorities referred to in the opinion. The court was right in receiving this evidence, and it was sufficient to justify the action of the jury, for it tended quite directly to prove the fact to be that the plaintiff had been deprived of a large part of his previous employment by this unlawful expulsion from the association.

An exception was taken to the allowance of proof of what was said as the reason assigned for the plaintiff's discharge from Palm Garden. But no more was received than accompanied the plaintiff's discharge. He was then informed that he was not wanted, but that musicians of the Musical Protective Union were the persons to be employed.

The defendant proposed to prove the proceedings, in part at least, resulting in the plaintiff's expulsion. That was not allowed by the court, for the reason that the judgment already mentioned had determined this removal to be unauthorized and unlawful. This part of the case had been fully tried in the *mandamus* proceedings, and the judgment there recovered was final and conclusive against the defendant. It was admissible for the plaintiff. to prove the manner and place in and at which musicians were employed in the city of New York; and the exceptions taken to the allowance of that proof, and the denial of motions to strike it out, cannot be maintained. It was proposed to show by the witness Amberg that he would not have employed the plaintiff as he had if it had not been for a boycot that he and others had placed upon a theatre in which this employment had taken place. This evidence was excluded, and the defendant excepted to the ruling. No harm was done to the defendant in excluding this proof. The important fact, so far as it had relation to the controversy, was that the plaintiff had been employed, and the extent of that employment, and the amount received by him for the services there rendered. That was not only material to the plaintiff's case, but also by way of diminution of the amount he might otherwise, in the judgment of the jury, be considered entitled to recover against the defendant. But how this employment came to be made was an entirely immaterial inquiry. A very large number of other objections were taken in the course of the trial, and exceptions reserved to the ruling of the court in its disposition of ques-

tions of evidence. Those which appear to be by any possibility involved in doubt have been considered. But these other objections seem to be without the least reason for their support. Nearly everything proved, or proposed to be proved, against the defendant, was made the subject of objection; and, as they were in large part clearly without foundation, it cannot be necessary to devote time to their disposition.

At the close of the case exceptions were taken to the manner in which the court is stated to have submitted it to the jury. These exceptions were massed together; and the directions stated to be the subject of the exceptions are not wholly found to correspond with those contained in the charge. That presented no more than the legal grounds upon which the action had been tried and defended; and it submitted the case to the jury in strict conformity to the legal principles and authorities as to the right of the plaintiff to recover which have already been mentioned. There is no ground whatever upon which the verdict could be set aside or the judgment reversed; and both the order and judgment should therefore be affirmed. All concur.